The 24-month sentence that Ms. Otero got for her grade C probation violation should be reversed and the case should be remanded. Let me start with the procedural problems in the sentencing. The sentencing court has to consider the Chapter 7 policy statements in the Sentencing Guidelines Manual and has to also calculate the guidelines range in Ms. Otero's underlying offense. Now, let me start with the Chapter 7 policy statement problem. The district judge actually did neither of those things here. I just have just a few things to say about the Chapter 7 issue. The cases, I believe the statutes 3565 and 3553, as well as the cases starting with Olobongi and other cases, say that that consideration is necessary. And what was done here, what was set in the record? If we start with United States v. Plunkett, that suggests that because of the disjunctive language, the sentencing court could rely on either the guidelines or the policy statement. And here the district court apparently relied on the guidelines. Why isn't that enough? Your Honor, the Olobongi and Taddeo and Garcia all say that the judge must at least consider the Chapter 7 policy guidelines. But he's not, of course, he's not bound by them. He doesn't have to follow them. And he can go on to do what was said in Plunkett, which is just to go on the underlying offense guideline range. I don't think there's much dispute in the case law, though, that there has to be at least some kind of discussion that indicates that the judge has considered what the Sentencing Commission has said about probation violations in Chapter 7. And, you know, what actually was said here was, you know, the most that shows that the judge did anything in regards to Chapter 7 was what the government's raised, that he said something to the effect of there's reason to depart. And I think that's, first, an ambiguous statement. And secondly, it's insufficient to show his consideration of the 3- to 9-month range that Chapter 7 proposes for this type of probation violation, because we just don't know if he had the right range in mind. We don't know if he might have thought it was a lower range or 8 to 14 months. We can't tell from the record. Go ahead. Can I just go back to the question about what the district court had to consider? Now, in Olobunji, it indicates that where the district court first relied on the policy guidelines, then it had to consider the policy statements. It had to consider the guidelines, not vice versa. And there it was relying on 3553B, which has since been, the Supreme Court has told us, is excised from the statute. And the other cases that you were discussing were supervisory release cases rather than probation cases. Why are the supervisory release cases applicable since probation instructions is under 3665 and the supervisory release is under a different statute? Your Honor, the supervisory release cases, I believe, are relevant because both the supervisory release and the probation statute refer the sentencing back to the 35 to 53, and the sentencing is covered essentially in the same manner, is referenced back to the subpart, sentencing under subpart A. And the guidelines, I think Chapter 7, covers both probation and supervised release in the same chapter. And if I may just point out, Your Honor, that in the cases, not just Olobunji, but the Taddeo case and the Garcia case, which, you know, the admittedly, they are supervised release cases. However, in those cases, the district judge, in each of those cases, explicitly mentions Chapter 7. In Olobunji, the judge actually cited the 3- to 9-month range. And in Taddeo and Garcia, both judges there actually mentioned Section 7B.1.4. Counsel, I have a slightly different question for you. Suppose that we agree with you that the supervisory release cases apply and that the judge here should have considered Chapter 7. And I think it's clear from the record that he didn't. What difference do you think it would have made had he considered it? I mean, given everything else that he said and his lengthy experience with your client. I understand the point Your Honor is making. But I believe that remand is nevertheless necessary here, because what the judge or the district judge has to do in sentencing, which I think the Supreme Court has said in Rita and since then, is not only consider the arguments that defense counsel makes, but also the judgment of the sentencing commission. The district judge should actually go back and compare, in that sentencing hearing, compare what the sentencing commission has deemed is the applicable wholesale kind of range of sentences that's appropriate for the type of offender that's before him. I think that's the key ingredient that's missing here. I don't think there's much of an argument. The judge has done a lot of consideration of defense counsel's arguments here, but he hasn't really done enough, either on Chapter 7 or he hasn't, and he hasn't done enough to consider what the underlying guidelines were of the offense. And I think that's also clear from the fact that he's, he actually made a mistake about what the original guidelines were. It was a guideline range of 12 to 18 months originally. Right. And he said it was 18 to 24. He said it was 18 to 24. And frankly, Your Honor, it's, it's, it's, I imagine possible to reach 18 to 24 months somehow ab initio in sentencing misotero, but we just don't know how it was reached, if it was computational error, if it was an application of some departures or adjustments and not others. And that's, I think that's a, that's the big problem, and it's, it's also a, there's an underlying policy problem in terms of the fact that Rita has acknowledged that the district judge's role, the district judge's role is, is to be a part of the development of the sentencing guidelines. The Sentencing Commission takes a look at what the, the district judges are doing out in the field with the empirical data of how they're applying the guidelines or not and what the reasoning is. And he's, he's, the district judge here has really failed to fulfill that role. And, and Your Honor, unless there are any other questions, I'd prefer to, to reserve any remaining time for, for rebuttal. All right. Thank you very much, Mr. Chen. You may proceed. Thank you. Good morning. May it please the Court. My name is Larry Spong. I represent the government in this case. A 24-month sentence imposed on a twice-morn and two-time probation violator is neither plain error nor is it unreasonable. In this case, everything that the counsel is arguing about, they had a chance to object to and failed to do repeatedly below. And I, I would point out, I, I know that the Court said earlier that the, the Court didn't consider the policy, the Chapter 7. I think the record's pretty clear that he did and what he said was sufficient. The fact is, he said he... But where, where in the record are you... Okay. First, I'm going to refer to the excerpts of record on page 17 where he said, I'm departing. In U.S. v. Garcia, that's what the Court said. And, and this Court said, noted that the judge there went through the history of the case and then said, I'm departing from the guidelines, and that was sufficient. But we have more in this case. We have two other reasons to believe the Court knew what, knew what it was departing from. First of all... Counsel, wait. He says, I'm departing from the guidelines. Yes. But he doesn't mention Chapter 7. He doesn't mention Chapter 7 in and of itself. But, but I think there are other reasons to believe why he is referring to that. On page 4 of the excerpts of record, or, excuse me, on page 14, he quotes from the probation officer's evaluation of the case. Those guideline recommendations are just above that on the very same page. That page is in the record, excerpts of record 103. And I would also note that the Court said, I've considered the defendant's papers, and then even at one point said he'd read them carefully, and those also contained the guideline policy range of three to nine months. So I think there's reason to believe that the Court, when he said he was departing, knew that's what he was departing from. Moreover, the Court just got it wrong when he said the maximum was 24 months. If he was saying he could depart from the guidelines that he mistakenly, and we agree, said were 18 to 24, then that statement about departure is wrong. So I think in the long run, and under the precedent of Garcia, this Court can say, yes, the statement that he was departing is enough. There's enough in the record to support that. Now, to the extent that Olubandji says and reads the or in the conjunctive instead of the disjunctive, I think there's cases that contradict that, but I don't think this Court need reach it. The question here is, even if, let's assume for a minute that once he rejected, which he did because he departed from the policy guidelines, he should consider the underlying range. On three occasions, he said there was a wrong statement, and on each occasion, defense counsel failed to object. First, on page 11, he said something to the effect of, I'm sorry, on page 4, says something to the effect of, what was it, 15 months or 18 months? That was clearly a mistake. Counsel didn't object. On page 11 of the record, he clearly states the wrong guidelines. He says it's 18 to 24 months. Again, no objection. And finally, the prosecutor himself on page 18 repeats the mistake, saying 18 to 24 months, and again, no objection. And this is just the very reason why plain error exists. Had the counsel objected at that time and said, but, Your Honor, you have to properly consider the guideline range, and you're wrong, and certainly counsel knew he was wrong, it was the same counsel at sentencing, so to stand silent and then bring it up here, that's exactly what plain error is for. So that that can't happen. So that the district court has a chance to do it right in the first place. So we're not here, like we are now, trying to figure out what happened. What is Ms. Otero's status right now? Is she serving this year? She is serving her time. Her projected release date, I believe, is in July of this year. And I would just note that under the plain error standard here, the judge, what, the bottom line is what all the courts say is what we have to have a reason, the court has to state it's reason sufficient for meaningful review. I think the judge clearly did that here. He took pains to go through the entire history of the case. I think it's, quite frankly, you can see him sort of battling with himself, trying to, you know, he's obviously upset, but he's given this person a break all along, and now he's finally going to do and give her a second chance. He departed originally. Pardon? He did a major downward departure originally. I don't believe there were, I'm trying to think. Yes, there was a departure because the original guideline was 12 to 18 months, and he gave a probationary sentence. That's correct, a significant thing. And that was, and he did that because she was pregnant at the time, and he wanted her to have family counseling. And it was her failure the first time, he gave her a second chance, her failure the second time, now we're here, and this is what happens. If the district court, and I'm just exploring this 18 to 24-month range, if the district court had rejected the fast track program downward departure, the two-level downward departure, which was discussed in the hearing, was the 18 to 24-month range still incorrect? Or was that correct, having rejected the two-level downward enhancement? I haven't done the calculation specifically, but I believe that would be correct. That would make the difference in the two-level, the two levels would make a difference, would make it from 12 to 18 to 18 to 20, because I think it was 12 to 18, 15 to 21, and then 18 to 24. And that's in the district court's discretion, right, to reject the fast track? That's correct. In the long run, I really think what we have here is an academic exercise. Even if this court were to somehow say the court didn't do the technical things correct, he did state sufficient reasons. So it doesn't affect the public integrity or the fairness of the case. I think what we would have here is clearly a case where the judge was going to impose the same sentence. Frankly, I'm not sure why we're here, Ms. Otero's taken a terrible chance. The judge got the sentencing statutory maximum wrong, it's 10 years, not two years, and quite frankly could face additional time on a remand. That's the calculation they have to take. But I just think in the long run, there's plenty of reasons to uphold the court's decision. The court took great pains to go through the case, state why it was he was reaching this, and I don't think that amounts to plain error. All right. Thank you, counsel. Thank you. Just very briefly. Your Honor, one thing that I would like to point out that has just come up is that I think Your Honor's pointed out that the judge believed that the guidelines range was 18 to 24 months, and so the sentence he imposed was the high end of that range. Now, the range that was actually calculated was 12 to 18 months originally. So if he had done the same thing with the correct guidelines range in mind, he would have imposed an 18-month sentence. And I'd like to say that that's, I mean, that's something that has to be taken into consideration. Now, in Judge Acuda, you brought up an interesting point about the fast track. And according to my calculations, that's correct. The judge had actually not granted the two-level departure for fast track, that you would end up with a guideline range of 18 to 24 months. The problem is, we don't know if this is true. Could you please address, could you please at some point address the fourth prong of the plain error standard, that is whether letting the sentence stand impairs fairness, integrity, or reputation of the court? I can do that, Your Honor. And I would say first and foremost that plain error does not apply. And I can come back to that. In terms of the fairness prong of plain error, I think the fairness, it's patently unfair when the guidelines calculation has actually been done on a mistake of the district judge's fact. We'll see that, I mean, it's in the record that the prosecutor before the district court actually told the district judge that fast track, the fast track program did not exist at the time of sentencing. And that was just, it was not only wrong, but this precise prosecutor, not Mr. Spong, but the prosecutor below had actually made a recommendation for fast track in the 2006 original sentencing proceeding. I think that affects fairness. Now, I think the plain error standard just doesn't apply here, because I disagree with the government's characterization of the defense counsel's objection. Defense counsel objected at all the appropriate, or made the appropriate arguments at the appropriate time. Now, it's true that she, as the judge was speaking, she didn't interject and stand up and say objection every time he said something wrong. But at one point he said something, it was 15 months or so, and she actually came back on, it's on the same page in the transcript, she came back and said no, the plea agreement's for a year. And she, and the defense counsel also corrected, corrected the judge about the, the guideline range. Did defense counsel raise the Chapter 7 policy statement? In her sentencing papers, Your Honor. But not before the court? She doesn't explicitly raise it before the court. Now, the judge, the district judge actually, it's kind of not a standard sort of guidelines first type sentencing. The district judge reached his 24-month sentence, and then defense counsel tried to go back and ask, well, what about probation's recommendation? It had become apparent at the time that she had, that he had already moved on and wasn't going to go to the 3 to, 3 to 9-month range. Now, the, the other point that I'd like to make is that defense counsel is not required at sentencing to object to the unreasonableness of the sentence, because the reasonableness is the appellate standard of review. Reasonableness is not, doesn't apply, and it's, it's the, it's the sufficient but no greater than necessary clause in, in 3553a that applies in the district court, and the fact that he, the district judge, the district judge go through the required procedures. Judge Gold, did counsel sufficiently answer your question? All right. Thank you, counsel. The case of U.S. v. Otero will be submitted. We will hear U.S. sentencing.
judges: Wardlaw, Gould, Ikuta